ELLIS, Judge.
This suit was instituted by Louisiana Scott against Baton Rouge Bus Company, Inc. and Delta Fire and Casualty Company, to recover damages resulting from personal injuries which were sustained by the plaintiff in an accident occurring on October 29, 1957. The accident in question occurred between a bus owned and operated by the Baton Rouge Bus Co. Inc., and a school bus owned and operated by the East Baton Rouge Parish School Board and insured by Delta Fire and Casualty Company.
A judgment was rendered in favor of the plaintiff and against both of the defendants, in solido, on March 26, 1959 and that judgment was signed on April 22, 1959. The total judgment was in the sum of Four Thousand One Hundred Eighty and no/100 ($4,180.00) Dollars and all costs of the suit.
Appeals were perfected by the two defendants and an answer to the appeal was filed by plaintiff in this action.
Subsequent to the lodging of the appeal in this court the defendant, Delta Fire and *488 Casualty Company, was placed in receivership by the commissioner of insurance and an injunction was issued ordering all proceedings against said company to be stayed. This injunction was issued in the 19th Judicial District Court.
The final determination of liability in this case rests upon a question of facts. It is to be noted that the trial judge rendered his decision on April 22, 1959 and the transcript of the testimony was filed on June 18, 1959. Thus the trial judge did not have the benefit of the transcript of the testimony in rendering his decision in this matter.
At approximately 8:15 a. m. on October 29, 1957, the city bus was being operated in an easterly direction on Government Street, said street running East and West. The school bus, which was being driven by Mrs. Luvilla Tanner, was being operated in a northerly direction on East Boulevard, said Boulevard running north and south. The plaintiff, Louisiana Scott, was a fare paying passenger on the city bus and she was standing in the aisle because there were no available seats. It appears from the testimony of several disinterested witnesses, as well as the driver of the city bus, Mr. Sherman Passman, that the city bus stopped to take on several passengers in the intersection of Government Street and East Boulevard. After these passengers got on the bus, the bus doors were closed and the bus proceeded into the intersection which was 55 feet wide from east to west.
In the meantime, the school bus, traveling north on East Boulevard had approached the intersection as the city bus was taking on its passengers preparatory to crossing the intersection, the light being red for traffic traveling north on East Boulevard at the time the school bus stopped at the intersection, waiting for the green light so that she could turn right or in an easterly direction on Government Street. As the school bus came to a stop at the red light, an automobile was waiting for a favorable light in the middle or left turning lane situated between the north and south bound lanes of East Boulevard. According to the driver of the school bus, she fixed her attention upon this automobile in the left turning lane and gave him a signal that he could proceed ahead of her when the light should change and she never looked again toward the city bus and did not see it until she struck it at a distance estimated by her of 13 feet clear of the intersection to the east of Government Street or 68 feet from the west boundary of the intersection of the two streets. The driver of the bus testified also that the light was green for her but she waited for the car in the left turn lane to proceed easterly on Government Street before she pulled out into the intersection. The driver of the city bus was positive that he had a green light, and after loading his passengers, proceeded into the intersection on this favorable light and when he had practically crossed the intersection he saw through the right door of his bus the school bus coming into the intersection, and he steered to his left in order^to try to avoid the accident. He further testified that had he stopped the school bus would have struck him square, whereas by continuing and going to his left the blow was lessened and was more in the nature of a side swipe by the left front fender of the school bus.
There are two questions dependent upon the facts which must be decided. As both drivers contend and testify that they had a green light when they entered the intersection, it is necessary that the court decide this question. The preponderance of the testimony, which included that of three eye witnesses, two disinterested, is to the effect that the operator of the city bus entered the intersection on a green light. We also feel that the testimony of the operator of the school bus adds strength to the fact that the city bus went in on a green light. The operator of the city bus testified that he had the green light, and two school boy passengers who got on the bus at this intersection when it stopped also testified positively that the light was green when the driver entered the intersection. One of the *489 school boy passengers was standing to the front of the bus looking out the front glass and the other was sitting on the first seat on the right hand side of the bus and had a clear view of the light and street intersection. The former’s testimony is attacked on the ground that he changed the distance at which the bus was from the intersection when he saw the green light. While he did testify to a different distance than formerly or prior to trial, it is apparent that he was honestly and sincerely trying to tell the truth. There is not one iota of evidence to show that he had any interest in the case and the mere difference in distance at one time on the trial insofar as this case is concerned, is immaterial. The main thing is that he saw this green light, he was looking forward, he was in a position to see it and he never at any time wavered in that respect. The school boy passenger sitting on the right front seat was positive in his testimony that the city bus entered the intersection on a green light.
In addition it is clear that the driver of the school bus was watching the driver of the automobile parked in the left turn lane and frankly stated that she never again looked toward the city bus after she came to a stop at a red light, which meant that there was a green light in front of the city bus.
We believe that the operator of the automobile in the left lane, seeing the city bus entering the intersection on the green light, which turned to yellow or caution before the city bus blocked his passage, went into the intersection or his left turn on Government Street on the caution or yellow light in order not to be delayed by the bus and that at that time the operator of the school bus, believing that the light had turned green, without looking, proceeded in on a yellow or caution light after the city bus had entered on a green light and had the right to cross the intersection without interference from waiting traffic.
The second question is whether the operator of the city bus, under the facts had a last clear chance to avoid the accident. There is only one fact or bit of testimony which would lead to an affirmative answer and that was by the school boy passenger sitting on the right front seat, when he testified that he observed the school bus making a right turn when “The front of the bus was about five feet past the curb. The city bus was about 5 feet past the west curb.” The witness is clearly mistaken if he meant that the front end of the city bus had proceeded five feet past the west curb of Government Street for there would have been no accident. The intersection itself was 53 feet in width, and the impact, according to both drivers, took place not closer than 13}/£ to 14 feet past the east curb of Government Street. The school bus only traveled approximately or 14 feet before it was struck, whereas the front end of the city bus had traveled the 15 feet plus the 13^ or 14 feet or nearly 70 feet before the impact. The school bus would have cleared the intersection and there would have been no accident if the city bus was only five feet in the intersection at the time the school bus started to make its sharp turn right into Government Street. The operator of the city bus testified that he saw the school bus driver when she started out into the intersection and at that time his bus would have been struck broad side and with much greater force and he therefore veered to the left and continued, hoping to avoid the accident. We are therefore of the opinion that the driver of the Baton Rouge bus did not have the last clear chance to avoid this accident, and that he did all that was possible under the facts of the case.
We are therefore of the opinion that the judgment insofar as it finds liability upon the operator of the Baton Rouge bus and awards judgment against the Baton Rouge Bus Company is manifestly erroneous and it is hereby reversed, annulled and set aside. -
As stated above, the Delta Fire & Casualty Company was placed in liquidation by order of the 19th Judicial District Court, after this appeal was lodged. The date on *490 which this order was signed was August 17th, 1959. We cannot further determine the quantum of the judgment which was rendered in the trial court nor on this appeal against Delta Fire & Casualty Company, the latter having been placed in liquidation by authority of the District Court which has complete jurisdiction and said court having issued an injunction which it deemed necessary to prevent the waste of assets, the obtaining of preferences, judgments, attachments or other like liens, while in the possession and control of the Commissioner of Insurance, said injunction being issued under the authority of LSA-R.S. 22:734. This rule is in line with the evident intent of the Legislature and the scant jurisprudence which has been developed on this particular subject. Benenate v. Brooks, La.App., 95 So.2d 757; Fried v. Dabria, La.App., 78 So.2d 844; LeBlanc v. Thibodaux, La.App., 60 So.2d 421 (See also Lewis v. Goodman, La.App., 92 So.2d 723, which recognizes this principle).
For the reasons assigned the judgment of the trial court is reversed insofar as it affects the defendant, Baton Rouge Bus Company, Inc. and all proceedings on this appeal are stayed insofar as it affects Delta Fire and Casualty Company.
Reversed in part, affirmed in part, and the motion to stay further proceedings against Delta Fire & Casualty Company is granted.