On the Merits

The evidence establishes that the above described property was acquired by Henderson Land, Timber and Investment Company, Inc., in 1923. By tax deed dated September 5, 1931, the subject property was adjudicated to the State of Louisiana for unpaid taxes due for the year 1930, under an assessment in the name of Henderson Land & Timber Co. No issue is raised in this suit as to the validity of that tax adjudication.
At a tax sale held on December 17, 1932, the same property was again adjudicated to the State of Louisiana ‘for unpaid taxes due for the year 1931, under an assessment in the name of Henderson- Land and Lbr. Co. The property had not been redeemed from the earlier tax sale before this last adjudication was made, and the trial judge held, correctly we think, that this adjudication for 1931 taxes was null and void since title to the property was still vested in the State at the time this tax sale took place. See Boagni’s Heirs v. Thornton, La.App. 3 Cir., 132 So.2d 494 (Cert. denied.)
On December 31, 1938, the Register of the State Land Office issued a certificate of redemption, certifying that the taxes due on this property for the year 1931 had been paid, and that under the provisions of Act 47 of 1938 the property was redeemed to Henderson Land & Lbr. Co. This redemption certificate related to the second adjudication to the State, which adjudication we consider to be void, and the certificate re *272 cites that the Henderson Company “is legally subrogated to all rights, liens and mortgages of the State incident to and growing out of the taxes for the years 1931 * * *»
After the issuance of this redemption certificate, the property was returned to the tax rolls. The taxes due on this property for the year 1939 were not paid, however, and so by tax deed dated May 4, 1940, this property was sold to defendant, A. H. Nan-ney, for unpaid taxes due for that year, under an assessment in the name of Henderson Land & Timber Co.
Mr. Nanney instituted this action as a monition proceeding on January 10, 1949, and opposition to the proceeding was promptly filed by the Henderson Company. By deed dated May 31, 1949, H. E. Harper, Trustee of the Estate of Henderson Land, Timber and Investment Company (then in bankruptcy), sold this property to plaintiff, Ben T. Johnston, and in June, 1949, Mr. Johnston filed an answer in the monition proceeding, opposing the confirmation of the tax sale to Nanney.
On June 27, 1949, the Register of the State Land Office issued a certificate of redemption certifying that the taxes due on this property for the year 1930 had been paid, and that under the provisions of Section S3, of Act 170 of 1898, LSA-R.S. 47:-2181, 47:2186 the property was thereupon redeemed to Henderson Land & Timber Co. This redemption relates to the first adjudication to the State, which adjudication we think was valid and had the effect of vesting legal title to the property in the State.
Plaintiff contends that the tax sale to Nanney on May 4, 1940, for unpaid taxes due for the year 1939 was an absolute nullity, because at the time of that sale title to the land was vested in the State. ' It is pointed out that this property was adjudicated to the State in 1931 for unpaid taxes due for the year 1930, and that it had not been redeemed from that tax sale at the time the property was sold to Nanney for unpaid 1939 taxes. Accordingly, plaintiff argues that Mr. Nanney did not acquire a valid title by virtue of the 1940 tax sale. To support this argument, plaintiff relies on the cases of Boagni’s Heirs v. Thornton, supra; Thomas v. Bomer-Blanks Lumber Company, La.App. 1 Cir., 105 So.2d 299; and Waterman v. Tidewater Associated Oil Company, 213 La. 588, 35 So.2d 225.
Defendant contends primarily that the redemption certificate issued on December 31, 1938, should be construed as a valid redemption of the property from the adjudication made to the State for unpaid taxes due for the year 1930, even though the certificate recites that the redemption was from the adjudication made for 1931 taxes. It is argued that this particularly is true because the redemption was made under the provisions of Act 47 of 1938, which statute was adopted as a temporary measure for the specific purpose of enabling property which had been adjudicated to the State or its political subdivisions to be redeemed and restored to the tax rolls.
The trial judge held that the redemption certificate issued by the Register of the State. Land Office on December 31, 1938, redeeming the property from the 1931 tax sale, had the effect of divesting the State of any title it had to the land, and that it particularly divested the State of the title it acquired in 1931 by virtue of the sale of the property for 1930 taxes. The trial court further concluded that title to the property was not vested in the State in 1939 or 1940, that the property was correctly assessed for taxes during the year 1939, and that the tax sale to defendant Nanney for unpaid 1939 taxes was valid.
The law is settled that where property has been adjudicated to the State and has not been redeemed in the time and manner provided by law, the tax officers of the State are without authority to assess and sell the property as belonging to the former owner or any other person. It also is well established that public property is exempt from taxation, and that the unauthorized acts of assessors and tax collectors *273 in assessing and collecting taxes on property which previously has been adjudicated to the State for unpaid taxes, cannot bind the State and does not constitute a waiver of title by the State. See Boagni’s Heirs v. Thornton, supra, and authorities therein cited.
In view of this established jurisprudence, we think the adjudication of the subject property to the State for unpaid taxes due for the year 1931 was an absolute nullity, and that the redemption of such property from that adjudication in 1938 did not divest the State of the title which it had acquired by virtue of the previous adjudication for unpaid 1930 taxes. The title to this property, therefore, was still vested in the State at the time the property was purportedly sold to defendant Nanney at the tax sale dated May 4, 1940. In our opinion, the 1940 tax sale to Mr. Nanney was an absolute nullity, and the trial judge erred in holding that he acquired a valid title by that sale.
We are aware of the fact that Act 47 of 1938 was adopted as a temporary relief statute, largely because of the economic depression which existed at that time, and that its purpose was to enable tax debtors to redeem property which had been adjudicated to the State or its political subdivisions and thus to restore such property to the tax rolls. In spite of that fact, however, we do not believe that the Legislature in adopting that act intended that the redemption of property from a void tax sale would have the effect of divesting the State of any title which it may have acquired in some other manner, and particularly of the title which it may have previously acquired under a valid adjudication. If this property had been redeemed from the adjudication for 1931 taxes under the provisions of Act 170 of 1898 (LSA-R.S. 47:2224), there seems to be no question but that such a redemption would not have divested the State of the title which it previously had acquired. We think the same rule should be applied to a redemption made under Act 47 of 1938.
Defendant argues, however, that the certificate of redemption issued on December 31, 1938, under the provisions of the 1938 act, was specifically validated by Act 256 of 1940 (LSA-R.S. 41:1326). This statute provides that:
“All certificates of redemption of property issued by the State Land Office under Acts 1934, No. 161; Acts 1935, Fourth Ex.Sess., No. 14; Acts 1936, No. 183; Acts 1938, No. 47, and the cancellation of taxes made by authority thereof, are ratified, validated and confirmed unless attacked within six months from July 31, 1940.”
We think this act had the effect of ratifying, validating and confirming the redemption of this property from the adjudication for 1931 taxes. That adjudication was an absolute nullity, however, so the redemption of the property from that sale has no legal effect. By that redemption the State merely returned to the tax debtor any right, title or interest in the property which the State acquired under the adjudication for 1931 taxes. In our opinion the Legislature, in adopting this 1940 act, did not intend that a redemption certificate, which had been issued as therein provided, would have the effect of divesting the State of a valid title it may have acquired prior to the tax sale affected by the redemption. We hold, therefore, that in spite of the provisions of the 1940 act, the certificate of redemption issued on December 31, 1938, did not divest the State of the title which it had acquired previously by virtue of the adjudication for unpaid 1930 taxes.
Defendant has filed exceptions or pleas of peremption or prescription based on the following grounds: (a) prescription or peremption of six months under LSA-R.S. 41:1326 ; (b) prescription or peremption of three and five years under Section 11 of Article 10 of the Constitution, LSA; and (c) prescription or peremption of three, ten and thirteen years under LSA-R.S. 41 :- 1328.
*274 We have already pointed out that the certificate of redemption issued on December 31, 1938, did not divest the State of the title it acquired by virtue of the sale of this property for 1930 taxes, in spite of the provisions of LSA-R.S. 41:1326 (Act 256 of 1940). The failure of plaintiff to attack that certificate of .redemption within the time allowed by LSA-R.S. 41:1326, therefore, is immaterial, and accordingly there is no merit to defendant’s plea of prescription or peremption of six months.
We think the law is settled to the effect that the prescription or peremption provided in Article 10, Section 11, of the Constitution is not applicable to a purported sale for taxes of public property, which sale is an absolute nullity. Richard v. Perrodin, 116 La. 440, 40 So. 789; Puritan Company v. Clarkson, 145 La. 1099, 83 So. 315; and Boagni’s Heirs v. Thornton, supra. In the last cited case, we said:
“Plaintiffs further contend that where a party obtains title from the sovereign subject to an earlier tax forfeiture to the State, said party must attack the tax title within the constitutional peremptive period of three years. See Const., 1898, Art. 233; and Const. 1921, Art. 10, Sec. 11. The prescription or peremption provided in the above cited sections of the constitution, however, is not applicable to a purported sale for taxes of public property, which sale is an absolute nullity.”
The prescription or peremption provided in LSA-R.S. 41:1328 (Act 185 of 1904) relates only to a deed which purports to be founded on a “forfeiture” for taxes, a proceeding which was prohibited at the time all of the tax sales involved here occurred. Const. Art. 10, Sec. 11. The tax sale on which defendant relies in this case was not a deed purporting to be founded on a forfeiture for taxes, so the prescription or peremption provided in LSA-R.S. 41:1328 is not applicable.
Defendant further pleads prescription of ten years, acquirendi causa, under the provisions of Article 3478 of the LSA-Civil Code, contending that he has been in physical possession of the land since 1944. He concedes that plaintiff’s answer and opposition to the monition proceedings were filed within ten years after he went into physical possession of the property, but he contends that such a pleading does not interrupt the running of the ten-year prescription. It is argued that the opposition filed by plaintiff in the monition proceeding did not involve the title to the property, and that the title did not become involved “until defendant agreed to try this case as a peti-tory action on April 8, 1960,” which was after the ten-year prescriptive period had run.
The .record shows that plaintiff Johnston filed an opposition to the monition proceeding in 1949, in which he alleged facts tending to support his claim that he is the record owner of this property and that the 1940 tax sale to defendant is void. When the case eventually came up for trial on April 8, 1960, Mr. Nanney on that day filed the exceptions or pleas which have been described, all of which were immediately referred to the merits. The minutes of the court then show that, “It was stipulated by counsel that the case be converted to a peti-tory action, with Ben T. Johnston assuming the position of plaintiff.” The case then proceeded to trial as a petitory action. The opposition in the monition proceeding filed by Johnston in 1949 was the only pleading filed by him which could have served as a petition in the petitory action. We think the date on which that opposition was filed, June 30, 1949, rather than the date on which the stipulation of counsel was entered into, determines when the “petitory action” was filed. We conclude, therefore, that the running of the ten-year prescription period was interrupted in 1949 by the filing of that opposition, and accordingly that there is no merit to defendant’s plea of prescription of ten years, acquirendi causa.
Defendant further filed a plea of estoppel and laches on the grounds that the State (and plaintiff as the assignee of the *275 tax debtor) is estopped from questioning the validity of the 1940 tax sale, because the property was .returned to the tax rolls in 1938 and the State has collected taxes on the property since that time.
In Graham v. Jones, 198 La. 507, 3 So.2d 761, the Supreme Court held that, “An es-toppel may not be invoked to validate a proceeding which is invalid per se.” In Conover v. Allison, La.App. 1 Cir., 178 So. 756, the court said, “As the tax sale was null for the reasons stated above, plaintiffs cannot now give life and effect to an invalid deed by urging against the owners a plea of estoppel.” And, in Boagni’s Heirs v. Thornton, supra, we held that estoppel may not be invoked to validate a proceeding which is invalid per se. In our opinion, the rule applied in these cases is applicable here. Since the 1940 tax sale to Mr. Nanney was an absolute nullity, plaintiff cannot validate that sale by means of a plea of estoppel. We find no merit, therefore, to the plea of estoppel or laches filed by defendant.
For the reasons herein assigned, we think the trial judge erred in decreeing that defendant is the owner of the land in dispute here. In our opinion, plaintiff Johnston acquired a valid title to the property by virtue of the deed from the trustee of the tax debtor and the later redemption of that property* from the adjudication for 1930 taxes.
Mr. Nanney, in his answer to the appeal, urges us to consider the correctness of the District Court’s ruling on the plea of abandonment and want of prosecution of this suit for a period of five years. The original monition proceeding was instituted by Nan-ney in January, 1949, and Johnston filed an opposition in that proceeding on June 30, 1949. No step in the prosecution of the suit was taken by Mr. Nanney thereafter until February 5, 1960, at which time the minutes of the court show that “By agreement of counsel, case fixed for February 19, 1960.” Counsel for Mr. Nanney then wrote a letter to opposing counsel on February 11, 1960, advising that he could not try the case on February 19, but that he would be able to dispose of it either at the March or April term of court. The minutes of February 15, 1960, then show that “Upon motion of counsel, fixing upset and case refixed for April 8, 1960.” The motion to dismiss the suit for want of prosecution was filed on March 31, 1960, and judgment was rendered dismissing the rule prior to. the trial of the case on April 8.
Although Article 3519 of the Revised Civil Code (now Article 561 of the LSA-Code of Civil Procedure) provides that when the plaintiff shall allow five years to elapse without taking any steps in the prosecution of the suit, he shall be considered as having abandoned it, the jurisprudence has been established to the effect that when the defendant takes any action in the case inconsistent with an intention to have the demand treated as abandoned, he waives his right to have the abandonment decreed. State v. United Dredging Co., 218 La. 744, 50 So.2d 826, Green v. Small, 227 La. 401, 79 So.2d 497, State ex rel. Shields v. Southport Petroleum Corporation of Delaware, 230 La. 199, 88 So.2d 25 and Wilson v. King, 233 La. 382, 96 So.2d 641. Assuming, therefore, that Mr. Nanney has occupied the position of a defendant in this case since 1949, it appears to us that his agreement to fix the case for trial in February, 1960, and the actual fixing of the case for trial pursuant to that agreement, constitutes a waiver of Nanney’s right to have the abandonment decreed. The trial court, therefore, correctly refused to dismiss the suit for want of prosecution.
For the reasons herein set out, therefore, the judgment of the District Court is reversed, and
It is ORDERED, ADJUDGED and DECREED that Ben T. Johnston, plaintiff herein, be and he is hereby decreed to be the lawful owner of the following described lands, situated in Vernon Parish, Louisiana, to-wit:
SW[4 ot bW>4 Section 6; SEJ4 of NW^ and NEJ4 of SW14 Section 7, Tp. 2 North, Range 9 West,
*276 that judgment further be rendered quieting his title thereto, and decreeing that as owner he is entitled to the full and undisturbed possession of such property.
It is further ORDERED, ADJUDGED and DECREED that the defendant, A. H. Nanney, pay all costs of this suit, including the costs of this appeal.
Reversed and rendered.