HOOD, Judge.
This suit was filed originally as an action to quiet a tax title. It was instituted by B. B. Wilkie against the heirs of George W. Cox, deceased. The defendants filed an answer and a third party petition, impleading W. J. Colbert as a party to the suit, attacking the validity of the tax sale which plaintiff seeks to confirm, and al-ledging record title in defendants. Plaintiff impleaded Howard L. Raphiel as an additional defendant.
Thereafter a number of pleadings were filed by the parties, among which were pleas or exceptions of prescription filed by plaintiff Wilkie and by third party defendant Colbert. In these last mentioned pleadings, Wilkie and Colbert allege that they and their authors in title have possessed the property for more than ten years under a deed translative of title, and that they thus have acquired the ownership of the subject property by prescription of ten years acquirendi causa. Wilkie demands that he be recognized as the owner of the north one-half of that property, and Colbert demands that he be recognized as the owner of the south one-half of it.
At the trial, the case was treated as a petitory action, and all parties apparently concede that the issue presented here involves a determination of the ownership of the property. Plaintiff and Colbert contend primarily that they acquired record title to this tract of land by virtue of a 1941 tax sale, and alternatively that they acquired ownership of it by acquisitive prescription of ten years under the provisions of LSA-C.C. art. 3478. Defendants contend that they are owners of the property by record title, and that they should be recognized as owners of it.
The case was tried on its merits, and judgment was rendered by the trial court confirming the tax title, recognizing B. B. Wilkie and W. J. Colbert as owners of the property and enjoining the remaining defendants from claiming title to that property. The original defendants have appealed.
The property affected by this monition proceeding is described as follows:
SW 14 of NW of Section 8, Township 7 North, Range 9 West, Natchitoches Parish, Louisiana.
This tract of land, comprising about 40 acres, was homesteaded by George W. Cox some time prior to 1903, and a patent was issued to him by the United States on May 24, 1909. The property was assessed for taxes prior to the issuance of the patent, however, and it was adjudicated to the State of Louisiana at a tax sale held on July 2, 1904, for unpaid taxes due for the year 1903, under an assessment in the name of G. W. Cox. No question is raised in this proceeding as to the legality of that tax sale or as to the validity of the adjudication to the State at that time.
The property was not redeemed from the state until April 13, 1965, when a certificate of redemption was issued by the Register of the State Land Office certifying that it was then redeemed to G. W. Cox. The property thus remained unredeemed for a period of almost 61 years, from July 1, 1904, until April 13, 1965.
In spite of the fact that the property had been adjudicated to the state on July 2, 1904, it was allowed to remain on the tax rolls for a number of years thereafter under assessments at various times in the name of “G. W. Cox,” or “George Cox, Sr.,” or “G. W. Cox, Sr.” And, under those assessments, the same property was again adjudicated to the State of Louisiana *88 on at least five other separate occasions for unpaid taxes due for the years 1904, 1909, 1920, 1921, 1922, 1923, 1924 and 1937.
Finally, at a tax sale held on June 18, 1941, this property was sold and adjudicated to “Howard L. Raphiel, Trustee,” for unpaid taxes due for the year 1940, under an assessment in the name of G. W. Cox. Plaintiff Wilkie, and third party defendant W. J. Colbert, acquired record title the property from or through Raphiel, the purchaser at the above mentioned tax sale. Both of those parties, Wilkie and Colbert, claim to be owners of the property by record title, and their claim of ownership by such a title, of course, depends upon the validity of the 1941 tax sale to Raphiel. One of the important issues presented on this appeal, therefore, is whether that tax sale to Raphiel is valid.
Defendants contend that the 1941 tax sale to Raphiel is an absolute nullity, because the property previously had been adjudicated to the state and it had not been redeemed prior to the time of that tax sale. They contend that under those circumstances the taxing officers of the state were without authority to assess and sell the property as belonging to the former owner, and that the tax sale thus is void.
Plaintiff concedes that the property had been adjudicated to the state for unpaid 1903 taxes, and that it had remained unredeemed up to the time of the 1941 tax sale. And, he admits that the taxing authorities thus were without power to assess and sell the property in 1940 and 1941 as belonging to the former owner. He contends, however, that defendants are now barred from asserting the invalidity of the 1941 tax sale by: (1) Prescription or per-emption of five years as provided in Article 10, Section 11, of the Louisiana Constitution, and LSA-R.S. 47:2228; (2) the prescription of two years or five years as provided by LSA-C.C. art. 3543; (3) the prescription of 13 years liberandi causa provided in LSA-R.S. 41:1328; and (4) the prescription of ten years acquirendi causa as provided in LSA-C.C. art. 3478.
The pertinent portion of Article 10, Section 11, of the Louisiana Constitution provides:
“No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption shall have expired and within five years from the date of the recor-dation of the tax deed, if no notice is given.”
Although this provision of the Constitution seems to restrict the grounds upon which a tax sale may be annulled after the lapse of the five year peremptive period thereon provided, our jurisprudence has been established to the effect that such a sale may be set aside on other grounds after that period of time has elapsed.
Where property has been adjudicated to the state, and has not been redeemed in the time and manner provided by law, the taxing officers of the state are without authority to^ assess and sell the property for taxes as belonging to the former owner or any other person. The purported sale of property for unpaid taxes under those circumstances is an absolute nullity, and an interested party is not barred by the peremption provided in Article 10, Section 11, of the Louisiana Constitution, from asserting the invalidity of such a sale. Heirs of Boagni v. Thornton, 132 So.2d 494 (La.App.3d Cir. 1961; Thomas v. Bomer-Blanks Lumber Co., 105 So.2d 299 (La.App.lst Cir. 1958); Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225 (1948); Neal v. Pitre, 142 La. 737, 77 So. 582 (1918); Puritan Co. v. Clarkson, 145 La. 1099, 83 So. 315 (1919); Winn Parish Bank v. White Sulphur Lumber Co., 133 La. 282, 62 So. 907 (1913); Cordill v. Quaker Realty Co., 130 La. 933, 58 So. 819 (1912).
*89 In Puritan Co. v. Clarkson, supra, for instance, our Supreme Court said:
“Appellant relies upon a plea of prescription of three years, under article 233 of the Constitution. It has been decided that a sale, purporting to be a sale for taxes, of lands belonging to the public domain, and therefore not subject to assessment for taxes, is an absolute nullity, not protected by the provisions of article 233 of the Constitution.”
And in Boagni Heirs v. Thornton, supra, we said:
“Since the property at issue here had previously been adjudicated to the State, and had not been redeemed in the manner provided by law at the time of the 1912 tax sale, we are convinced that the 1912 tax sale to Boagni (by the Tax Collector, for state, parish and special taxes) was null and void * * * ”
“ * * * The prescription or peremption provided in the above cited sections of the constitution [Const., 1898, Art. 233; and Const., 1921, Art. 10, Sec. 11], however, is not applicable to a purported sale for taxes of public property * * * ”
In the instant suit the evidence shows that the property at issue here had been adjudicated to the state, and it had not been redeemed by the time of the 1941 tax sale. Under those circumstances, we conclude that the purported tax sale to Ra-phiel on June 18, 1941, is an absolute nullity, and that defendants are not barred by peremption, as provided in Article 10, Section 11, of the Louisiana Constitution, from asserting that invalidity.
We find no merit to plaintiff’s claim that defendants are barred from attacking the 1941 tax sale by LSA-R.S. 9:5803, by LSA-C.C. art. 3543 or by LSA-R.S. 41:-1328. We feel, however, that the provisions of LSA-R.S. 9:5803 are applicable in determining the issues raised by plaintiff’s plea of prescription of ten years ac-quirendi causa.
The next important issue presented is whether plaintiff and Colbert have acquired the ownership of the subject property by prescription of ten years ac-quirendi causa, as provided in LSA-C.C. art. 3478 et seq.
The evidence shows that after the 1941 tax sale was completed Raphiel, the purchaser, formally acknowledged that at that tax sale he had purchased the property for himself and for W. J. Colbert, each acquiring an undivided one-half interest in and to that tract. According to the records they remained owners, in indivisión, of the property until June 23, 1962, when plaintiff Wilkie acquired from Raphiel the one-half interest which the latter purportedly owned in the property. As the result of later transactions, including a partition agreement, the title which Raphiel acquired at the 1941 tax sale became vested in plaintiff and Colbert as follows: Wilkie acquired the north one-half of the 40 acre tract, and Colbert acquired the south one-half of that tract.
The subject property has never been used for any purpose other than for the growing of timber, and by nature it is unsuitable for any other use. Most of the property is low and is subject to overflow, and the tract is cut up by creeks and other small streams.
The uncontradicted testimony of Wilkie and Colbert, and of six other witnesses who have been familiar with the property for many years, establishes that Raphiel and Colbert went into possession of that property immediately after they acquired it at the 1941 tax sale. The boundaries around the entire 40 acre tract of land were well defined by hacks and blazes and with paint, and a part of one side of the property was marked by a parish road. The marks identifying the boundary were plainly visible in 1941, and they have remained visible up to the present time.
The acts of possession which were exercised by Raphiel and Colbert consisted of maintaining lines around the property, cruising it against trespassers, cutting tim *90 ber, building and maintaining fences in two different places on the property, and keeping mules in the enclosures formed by those fences.
In 1948 Raphiel and Colbert sold some of the timber on this 40 acre tract to J. E. Holland for $850.00. Immediately after that sale was completed Holland conducted logging operations on the property for several months. These operations included the construction of a mule corral, and at least some, if not all, of the above mentioned fences enclosed the work mules. The operations also included the skidding of logs from the place where they were cut to a point near the road, where they were banked for a period of time before they were loaded and hauled away.
Raphiel and Colbert have paid all of the taxes which have become due on the property since 1941. They were in good faith when the property was purchased at the tax sale. Their possession of the property has been open and notorious and they were not disturbed in their possession from the time of the tax sale in 1941 until this suit was filed in December, 1966.
The evidence convinces us that the plaintiff and Colbert were in good faith, and that the possession which they, or their authors in title, have exercised has been sufficient to satisfy the requirements of LSA-C.C. arts. 3478-3498. The question remains, then, as to whether the 1941 tax deed is a “just title” sufficient to serve as the basis for claiming ownership by the acquisitive prescription of ten years.
Defendants contend that since the 1941 tax deed is an absolute nullity, it cannot be construed to be a “just title,” sufficient to serve as the basis for a ten year prescriptive title. We are unable to agree with that argument.
Even though a tax sale is invalid, this invalid deed may serve as the basis for the acquisition of an indefeasible title by prescription of ten years acquirendi causa under LSA-C.C. art. 3478, if the tax deed appears on its face to be valid and translative of title, and if the tax purchaser is in good faith and takes actual and notorious possession of the property. LaCaze v. Boycher, 80 So.2d 583 (La.App. 1st Cir. 1955); Eivers’ Heirs v. Rankin’s Heirs, 150 La. 4, 90 So. 419 (1921); Jacobs v. Southern Advance Bag & Paper Company, 228 La. 462, 82 So.2d 765 (1955).
In LaCaze v. Boycher, supra, our brothers of the First Circuit Court of Appeal appropriately said:
“For even though a tax sale is invalid, this invalid deed may be the basis for acquisition of an indefeasible title by ten years’ prescription acquirendi causa under Article 3478, if the tax purchaser is in good faith and takes actual and notorious possession of the property, Eivers’ Heirs v. Rankin’s Heirs, 150 La. 4, 90 So. 419, containing an extensive citation of authorities.”
And, in Eivers’ Heirs v. Rankin’s Heirs, supra, the Supreme Court held:
“It is well settled that a bona fide purchaser at a tax sale, receiving a deed prima facie valid, though in fact invalid, after having actual and notorious possession of the property, in good faith, for 10 years, acquires an indefeasible title by prescription acquirendi causa. A purchaser at tax sale may, in good faith, presume that the assessor and the tax collector have performed their duties; and it is not essential to the purchaser’s good faith that he should investigate the assessment rolls or verify the recitals of the tax deed.”
Defendants point out that under the provisions of Article 3497 of the Civil Code the ten year acquisitive prescription cannot be applied unless the object of it “be susceptible by its nature of alienation, and the alienation of which is not prohibited by law.” They argue that the alienation or re-sale of the property was forbidden by law while it was in a condition of forfeiture to the state, and thus the ten year pre *91 scriptive period could not run while plaintiff’s author in title owned it. They cite Act 111 of 1938 (now LSA-R.S. 47:1955); La.Const. Art. 4, Sec. 2; and LSA-R.S. 9:2901.
A similar issue was presented in Saucier v. E. Sondheimer Co., 212 La. 490, 32 So.2d 900 (1947). There the property was adjudicated to the State for unpaid 1898 taxes. The good faith purchaser acquired and began possessing it in 1927. It was redeemed from the State in the name of the original tax debtor in 1941. The possessor then claimed ownership by ten years acquisitive possession. Our Supreme Court held that Act 310 of 1936 (now LSA-R.S. 9:5803) enured to the benefit of the purchaser in good faith by just title, and that after the property was redeemed in 1941, the possessor was entitled to claim ownership of the property by prescription of ten years, computing his period of possession as beginning in 1927. See also Menefee v. Pipes, 159 So.2d 439 (La.App.2d Cir. 1964).
The pertinent portion of LSA-R.S. 9:-5803 provides, “In all cases where immovable property has been, or may be, adjudicated or forfeited to the state for non-payment of taxes and has been or is subsequently redeemed by a purchaser in good faith and by just title, or by the heirs or assigns of such purchaser, prescription shall not be interrupted or suspended during the period that title is vested in the state.”
We have held that plaintiff’s author in title and Colbert were purchasers in good faith and by just title. It has also been shown that the property was redeemed from the 1904 adjudication to the state. We now conclude that LSA-R.S. 9:5803 inures to the benefit of plaintiff and Colbert now that the subject property has been redeemed, and that the prescription of ten years may be applied even though the property was in a condition of forfeiture to the state during a substantial part of the time while the parties possessed it.
We think plaintiff and Colbert have established ownership of the property by the prescription of ten years acquirendi causa. The judgment rendered by the trial court decrees, in part, that the tax title be confirmed and quieted. Since we have determined that the tax title was invalid, the judgment appealed from must be amended to eliminate that portion of the judgment which decreea that the tax title be confirmed and quieted.
The remaining portion of the judgment rendered by the trial court recognizes Wil-kie and Colbert as being owners of the entire tract. The record indicates that Wilkie owns the north one-half and Colbert owns the south one-half of the subject property. These two parties appear to be satisfied with the judgment which was rendered, however, since neither has appealed or answered the appeal. We have decided, therefore, to affirm that portion of the judgment appealed from which recognizes Wilkie and Colbert as owners of the tract of land in dispute here.
For the reasons herein set out the judgment appealed from is amended by elimination of that portion of such judgment which decrees that the tax title from G. W. Cox to Howard W. Raphiel, dated June 23, 1941, be confirmed and quieted. All of the remaining portions of the judgment rendered by the trial court, and particularly that portion which decrees that B. B. Wilkie and W. J. Colbert are recognized as owners of the subject property and enjoins the remaining defendants from setting up any right, title or interest in or to any part or portion of said property, are affirmed. The costs of this appeal are assessed to defendants-appellants.
Amended and affirmed.
On Application for Rehearing
En Banc. Rehearing denied.